## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

**MICHAEL JERMAINE GREENE,**

      **Plaintiff,**

**v.**                                      **Case No. 2:17-cv-02897**

**DAVID BALLARD, Warden, et al.,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the court is a Motion to Dismiss filed by defendants David Ballard, Jonathan Frame, Margaret Clifford, and Andy Mitchell (ECF No. 141), in which defendant Sherrell Snyder[1] has joined (ECF No. 143).

## FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

This matter, which has a convoluted procedural history, is proceeding on a Second Amended Complaint (ECF No. 79) granted in conjunction with the dismissal of four other civil actions filed by the plaintiff, Michael Jermaine Greene (hereinafter "Greene") in this court (Case Nos. 2:18-cv-00414; 2:18-cv-00469; 2:18-cv-00905; and 2:18-cv-00946), which contained many of the same allegations set forth in the Second Amended Complaint herein.

---

[1] PsiMed is the mental health provider at MOCC.  According to PsiMed's website, "Sherrill Snyder" is PsiMed's Assistant Director at MOCC.  The Clerk is directed to modify the spelling of this defendant's name on the docket sheet.

Greene's initial complaint was brought against the same five defendants who have filed the instant motion to dismiss: David Ballard, the former Warden of the Mount Olive Correctional Complex ("MOCC"); Jonathan Frame, the Associate Warden of Security at MOCC; Captain Margaret Clifford, a supervisory correctional officer at MOCC; Sgt. Andy Mitchell, a correctional officer at MOCC; and Sherrill Snyder, an employee of PsiMed, Inc., the mental health care provider at MOCC. However, the Second Amended Complaint names an additional 50 defendants, who have not been served with process.

The Second Amended Complaint contains allegations that can be grouped into the following types of claims: (1) deliberate indifference to Greene's serious medical and mental health needs; (2) the use of excessive force against Greene by correctional officers; (3) the failure to protect Greene from assaults by inmate gang members; (4) claims of tampering with or withholding Greene's mail; (5) claims of tampering with Greene's inmate trust account balance and withholding indigent packets; and (6) general claims of retaliatory conduct motivated by Greene's filing of lawsuits.

Before addressing the pending motion to dismiss, a brief summary of the factual background of this matter and Greene's allegations will be helpful. Greene is serving a sentence for First Degree Robbery imposed by the Circuit Court of Mercer County, West Virginia, on or about July 5, 2013. Greene was previously incarcerated at the Huttonsville Correctional Center ("HCC"). While incarcerated at HCC, Greene filed two other lawsuits in the United States District Court for the Northern District of West Virginia concerning his conditions of confinement there. (Case Nos. 5:16-cv-00051-FPS-JES and 3:16-cv-00141-GMG-RWT). Greene also had a pending habeas corpus matter.

While at HCC, Greene suffered an emergency medical incident (believed to be a first-time seizure), which resulted in his treatment at Ruby Memorial Hospital ("Ruby")

in Morgantown, West Virginia.  Greene's discharge papers from Ruby indicated that he was scheduled for follow-up visits with a neurologist and a nephrologist on November 30, 2016.  (ECF No. 1-1 at 7, 13).  The discharge papers further stated that for Greene's complaints of suffering visual and auditory hallucinations, "[t]he best treatment would be cognitive behavioral therapy."  (ECF No. 36-1 at 15).  Upon discharge from Ruby, Greene was returned to HCC, but, on October 26, 2016, he was transferred to MOCC, where he was initially housed in the Mental Health Unit ("MHU").

The Second Amended Complaint alleges that, when Greene arrived at MOCC, he underwent an intake medical examination, during which, he alleges, an unidentified nurse injected him with a "liquid item" that now allows others to read his mind and monitor his thoughts and actions directly or through prison radios.  (ECF No. 79 at 3-5, and 7, ¶¶ 3-5 and 31).  The Second Amended Complaint further contends that MHU and medical staff did not permit him to attend his follow-up appointments on November 30, 2016, and that he "never went back at all and his issues were never managed and [have] gotten worse." (*Id.* at 3, ¶ 4).  However, he fails to specifically identify the staff member(s) who made these decisions concerning his treatment.  Additionally, throughout the Second Amended Complaint, Greene summarily alleges that MHU and medical staff did not properly treat his conditions, including not allowing him to participate in a cognitive behavioral therapy program.  (*Id.*, *passim*).

The Second Amended Complaint further alleges that, while incarcerated at MOCC, Greene was subjected to several uses of force by specifically identified correctional officers and was assaulted and threatened by members of a prison gang, Dead Man Incorporated ("DMI") on several occasions.  Greene twice requested and was denied Special

Management or a special housing assignment.[2]  Greene's Second Amended Complaint also contains various allegations concerning issues with his inmate mail, his inmate grievances, and his inmate trust account, and further alleges that correctional staff have refused to give him meal trays.  He alleges that this conduct is in retaliation for the filing of this case and his other lawsuits and numerous grievances.

On March 11, 2019, defendants Ballard, Frame, Clifford, and Mitchell filed the instant Motion to Dismiss (ECF No. 141) and Memorandum of Law in support thereof (ECF No. 142).  On March 14, 2019, defendant Snyder filed a Motion to Join in this Motion to Dismiss (ECF No. 143), which has been granted by separate order.

The defendants' motion documents assert that Greene's claim that a liquid item or device was placed in his body which enables others to monitor his thoughts and actions and causes him pain fails to state a claim upon which relief can be granted and should be dismissed as frivolous.  (ECF No. 142 at 6-7).  The defendants' motion documents further assert that Greene failed to exhaust the available administrative remedies concerning some of his claims.  (*Id.* at 7-18).  Finally, the motion documents assert that the Second Amended Complaint fails to state a plausible Eighth Amendment claim of deliberate indifference to serious medical needs and that these defendants are entitled to qualified immunity thereon.  (*Id.* at 18-20).  On March 29, 2019, Greene filed a Memorandum of Law in Response to Motion to Dismiss ("Response") (ECF No. 147), which will be addressed as necessary *infra*.  The defendants did not file a reply brief.  The defendants' motion is ripe for adjudication.

---

[2] Greene was subsequently transferred to the Northern Correctional Facility ("NCF"), which is the facility that generally houses Special Management inmates in June of 2019, and he is now again incarcerated at HCC.  Both of those facilities are located within the jurisdiction of the United States District Court for the Northern District of West Virginia.  Thus, to the extent that some of Greene's more recent filings address his conditions of confinement at those facilities, the undersigned will not address those issues.

## STANDARDS OF REVIEW

Where, as here, a prisoner is proceeding *in forma pauperis*, this court has a duty to "screen initial filings . . . to independently assess the merits of *in forma pauperis* complaints" and "exclude suits that have no arguable basis in law or fact." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)); *see* 28 U.S.C. §§ 1915(e) and 1915A.  The court must "dismiss a complaint filed *in forma pauperis* 'at any time if [it] determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)).  That section also provides for dismissal where the complaint seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(iii).  A frivolous case has been defined as one which is based on an indisputably meritless legal theory.  *Denton v. Hernandez*, 504 U.S. 25 (1992).  A similar screening provision governs prisoner complaints filed against government entities.  28 U.S.C. § 1915A.

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.  Nonetheless, the complaint must "contain enough facts to state a claim for relief that is plausible on its face."  *Id.* (internal quotation marks omitted); *see also Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Otherwise, it is subject to dismissal on screening by the court or a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, such as the one filed by the defendants herein.

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans*

*v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.*

"[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-

pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

**ANALYSIS**

### A.    The defendants' exhaustion defense.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative

procedures.  *Id.* at 741.  In *Booth*, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. *Id.*

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)).  Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c).  The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life . . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the

> Commissioner's designee, or the Executive Director of the
> Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

Exhaustion of administrative remedies is an affirmative defense which must be raised and demonstrated by the defendants, and the plaintiff is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Anderson*, *supra*, 407 F.3d at 681 (exhaustion of administrative remedies is an affirmative defense to be raised by defendant); *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007) (the burden of proof for failure to exhaust PLRA administrative remedies lies with the defendant). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)). If a plaintiff fails to exhaust available administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law on the corresponding claim. *See Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2.

In *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016), the Supreme Court held that "the exhaustion requirement hinges on the 'availability' of the administrative remedies. An inmate . . . need not exhaust unavailable remedies." *Id.* The Court further defined "available" as "'capable of use' to obtain 'some relief for the action complained of.'" (*Id.* at 1859, citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

Michael Greene is a prolific grievance filer, and he attached numerous grievances to both his initial Complaint and his Second Amended Complaint. The defendants' memorandum of law addresses each grievance attached to those two documents, and

asserts that the following grievances were not properly exhausted by Greene: 16-MOCC-Q1-1281; 16-MOCC-Q1-1344; a grievance filed on 1/5/17 (found in ECF No. 1-1 at 6, in which the grievance number is obscured); 17-MOCC-Q2-31; 17-MOCC-Q1-58; 17-MOCC-Q1-695; 17-MOCC-Q1-714; 17-MOCC-Q2-770; 17-MOCC-Q2-792; 17-MOCC-Q2-805; 17-MOCC-Q2-814; 17-MOCC-Q2-819; 17-MOCC-Q2-1094; 18-MOCC-Q2-350; and 18-MOCC-Q2-351.[3] Some of these grievances were rejected for procedural reasons at one of the three levels of the grievance process. Others have no evidence of having been submitted at all three levels thereof. The defendants' motion states, in a somewhat conclusory manner that "any claims asserted by the Plaintiff and based upon issues contained in those grievances are properly dismissed because Plaintiff failed to exhaust his administrative remedies with regard to the same." (ECF No. 142 at 18).

However, Greene also attached relevant grievances to other filings in this civil action, which the defendants did not address in their motion documents. (*See* ECF Nos. 8, 36-1, 71-1, and 75). Some of those grievances appear to be properly exhausted, while others are not. Additionally, there are several grievances referenced in the Second Amended Complaint which are not presently part of the record before the court. Thus, it is apparent that this court has not been provided all relevant grievances filed by Greene.

Complicating this issue is the fact that, throughout the pendency of this civil action, Greene has maintained that prison staff have interfered with his ability to properly file and appeal his grievances by not submitting them, not returning copies of them with the required responses, and not mailing his appeals thereof in a timely fashion, if at all.

---

[3] Greene also attached two grievances that he filed while at Huttonsville Correctional Center ("HCC") prior to his transfer to MOCC (Grievance Nos. 16-HCC-E1-393 and 16-HCC-E1-422). (ECF. No. 1-1 at 29-31). Because this court is only concerned with allegations concerning Greene's conditions of confinement at MOCC after October 26, 2016, the undersigned will not consider the HCC grievances.

Greene has also submitted various hand-written "grievances" that are not on the proper prison grievance form and do not demonstrate that they were actually submitted through the three-step grievance process. (ECF No. 1-1 at 41-44; ECF No. 75). While the undersigned cannot consider these "grievances" to be properly exhausted, if Greene's assertions that prison staff have interfered with his efforts to properly exhaust the grievance process are found to be credible, these documents could support a finding that the grievance process was unavailable with respect to the claims addressed therein.

"[A]n administrative remedy is not considered to be available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore,* 517 F.3d at 725. In *Ross,* the Supreme Court made clear that one way in which an administrative remedy may be considered "unavailable" is where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 136 S. Ct. at 1859-60. Greene's allegations of failing to return grievances and tampering with his grievance documents, if established, could allow the court to draw an inference that the grievance process was being "thwarted" to a degree that the remedies were unavailable to Greene.

At this stage of the proceedings, the undersigned proposes that the presiding District Judge **FIND** that the record herein is insufficient to permit the court to find, as a matter of law, that Greene has failed to exhaust available administrative remedies concerning each claim alleged in the Second Amended Complaint. Thus, additional development of the record is necessary for the court to make an appropriate ruling concerning the defendants' exhaustion defense. Accordingly, the defendants' motion to dismiss on this basis should be denied without prejudice.

**B.      Greene's claim of monitoring by a liquid item in his body should be dismissed as frivolous.**

Notwithstanding the exhaustion issue, Greene's claim that he has been monitored by a liquid item placed in his body is subject to summary dismissal with prejudice. *See* 42 U.S.C. § 1997e(c)(2) (if the court determines that a claim is frivolous, malicious, fails to state a claim, or seeks monetary relief from a defendant who is immune from such relief, the claim may be dismissed without first requiring exhaustion).

The Second Amended Complaint alleges that, when Greene arrived at MOCC, an unidentified nurse placed some type of "liquid item" inside his body that permits others to know what he is thinking and doing, makes him taste things before, during and after his meals, and causes him pain all over his body. (ECF No. 79 at 3-5, 7, ¶¶ 3-5 and 31). Greene further alleges that MOCC "COs and MHU staff," and particularly defendant Sgt. Andy Mitchell, were talking on the radios about everything that Greene was thinking and doing. (*Id.* at 5, ¶ 5). He further states, "It is able to kill Mr. Greene and the radios placed all over the prison for him, other inmates, and all staff to hear what he is thinking or doing inside his cell." (*Id.*) The defendants' motion to dismiss asserts that these allegations are "baseless, and beyond doubt, [and] prove no set of facts which would 'entitle him to relief.'" (ECF No. 142 at 7).

Greene's response to the motion to dismiss addresses this claim as follows:

> The claim plaintiff raised in complaint about the liquid item being inside him and allow the defendants, etc. to read his thoughts from a computer and spoken about on radios all over the prison is a claim that has everything to do with an investigation by an appointed lawyer or this court to prove other wise on the fact that the plaintiff filed Declarations and Affidavits and a witness: Steven P. Sopko filed a declaration for me as well indicating this liquid item claim is true. * * * The court should do everything in its power to find out the truth to this claim of liquid item being inside plaintiff's body and what it does to him inside this prison (MOCC).

(ECF No. 147 at 1, 3).  In addition to numerous declarations and affidavits he has filed on his own behalf, Greene has also submitted two declarations from other inmates which summarily assert that his claim concerning this liquid item is "true" and that "everyone" can hear his thoughts and what he experiences in his cell and that staff talk about it over the radios.  (ECF Nos. 122 and 154).  Greene's Second Amended Complaint and his own declarations and affidavits further assert that this alleged monitoring has also occurred at other West Virginia correctional facilities where he has been incarcerated since being transferred from MOCC.

However, federal courts have consistently held that allegations that prison officials have installed monitoring devices in a prisoner's body to intercept thoughts and conversations are patently frivolous and subject to summary dismissal.  *See, e.g., LaVeau v. Snyder*, 84 F. App'x 654 (7th Cir. 2003) (*in forma pauperis* complaint alleging that prison staff used device to monitor his unspoken thoughts and manipulate him as a result was required to be dismissed as frivolous); *Handshy v. Graves*, 22 F. App'x 972 (10th Cir. 2001) (dismissing appeal as frivolous where plaintiff alleged "clearly delusional" claims that prison officials were "hacking into" computer chips implanted in his body); *Owens-El v. Pugh*, 16 F. App'x 878 (10th Cir. 2001) (dismissing appeal as frivolous where plaintiff claimed he was being harassed and tortured through a mind-control device); *Williams v. Collier*, No. 1:10-cv-28, 2010 WL 2036699 (E.D. Tex. Feb. 4, 2010) (complaint alleging that prison doctors installed monitoring devices in prisoner's teeth to intercept his conversations dismissed as frivolous).

Greene's allegations concerning the alleged "liquid item" placed in his body that allows prison staff at MOCC and elsewhere to monitor his thoughts and actions are wholly irrational, fanciful and delusional, and precisely the type of allegations for which

dismissal for frivolity under the screening provisions was designed. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Greene's claims arising out of the alleged placement of a "liquid item" or other monitoring device in his body, and the alleged monitoring thereof by prison staff, is legally and factually frivolous and should be dismissed against all defendants under 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1), and 42 U.S.C. § 1997e(c).

### C.    Greene's Eighth Amendment claim concerning medical care.

The only other claim that the defendants' motion to dismiss specifically addresses is Greene's claim that he was not provided follow-up "treatment" as directed in his discharge papers from Ruby Memorial Hospital, which they characterize as a claim of deliberate indifference under the Eighth Amendment. The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII.

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833. In order to establish an Eighth Amendment violation with respect to prison living conditions, an inmate must establish by a preponderance of the evidence that the prison official acted with deliberate indifference (subjective component) to a substantial risk of harm (objective component).

14

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) a deprivation that is, objectively, "sufficiently serious" (that is, one that results in the "denial of 'the minimal civilized measure of life's necessities'"); and (2) that a defendant had a "sufficiently culpable state of mind" (that is, "'deliberate indifference' to inmate health or safety"). *Farmer*, *supra*, 511 U.S. at 834. The Supreme Court rejected an objective test for deliberate indifference.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Thus, a defendant is not liable under the Eighth Amendment unless he or she knew of and disregarded an excessive risk to inmate health or safety. *Id.* at 847. Negligence will not suffice.

Additionally, it is well-settled that prison officials are entitled to rely upon the professional judgment of trained medical personnel. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled on other grounds by Farmer*, 511 U.S. at 840; *Shakka v. Smith*, 71 F,3d 162, 167 (4th Cir. 1995). Thus, to establish a claim of deliberate indifference against non-medical prison personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct. *Miltier*, 896 F.2d at 853.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*

*v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990; *see also Rogers v. Evans*, 792 F.2d 1052, 1058

(11th Cir. 1986) (collecting cases).  "Serious medical needs" are those which have been

diagnosed by a physician as mandating treatment or that are so obvious that even a lay

person would easily recognize the necessity for a doctor's attention.  *Gaudreault v. Munic.*

*of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.  *See id.*  Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment.  *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.  The burden of demonstrating deliberate indifference to a

serious medical need is difficult.  It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain.  *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock*

*Corr. Ctr. Med. Dep't*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).

Furthermore, disagreements between a health care provider and the inmate over

a diagnosis and the proper course of treatment are not sufficient to support a deliberate

indifference claim, and questions of medical judgment are not subject to judicial review.

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319

(4th Cir. 1975).  As noted by the Fourth Circuit, an inmate is not entitled to unqualified

access to health care and treatment may be limited to what is medically necessary and not

"that which may be considered merely desirable" to the inmate.  *Bowring v. Godwin*, 551

16

F.2d 44, 47-48 (4th Cir. 1977).

With respect to this claim, after being allowed to amend his complaint, at best, Greene now alleges that "MHU staff" told him that his appointments had to be rescheduled and then he "never went back at all and his issues was never managed and gotten worse." (ECF No. 79 at 4, ¶ 4). Defendants Ballard, Frame, Clifford, Mitchell, and Snyder assert that Greene has mischaracterized what they construe as mere recommendations in the discharge papers. They further assert that Greene has failed to establish that these defendants caused a "sufficiently serious" deprivation of medical care because he has not identified a "serious medical need" that was not properly treated. (ECF No. 142 at 19-20). Thus, they contend that Greene has not sufficiently established the objective requirement of an Eighth Amendment claim. (*Id.*)

Additionally, these defendants contend that Greene's allegations fail to plausibly establish the subjective component of an Eighth Amendment deliberate indifference claim. Specifically, their memorandum of law states:

> Plaintiff alleges he was in the MHU at Mt. Olive because he "heard voices" and had "ringing in his ears," but does not sufficiently allege facts to prove how Defendants had actual knowledge or reckless disregard for his medical conditions . . . . His only allegation is that MHU staff did not take him to a doctor's appointment, however, "mere negligence or malpractice is insufficient to constitute a violation of the Eighth Amendment." *Miltier*, 896 F.2d at 851-[52].

(ECF No. 142 at 20).

These defendants further assert that they are entitled to qualified immunity on Greene's Eighth Amendment medical treatment claim. Qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." M*eyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013). The

following test is used to determine whether a defendant is entitled to qualified immunity: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right; and (2) was that right clearly established such that a reasonable person would have known that their conduct was unlawful. *See Saucier v. Katz*, 533 U.S. 194 (2001). In *Pearson v. Callahan,* the Supreme Court held that a court may exercise its sound discretion to decide which prong of the inquiry to address first. 555 U.S. 223, 242 (2009); *see also Oliver v. Fiorino*, 586 F.3d 989, 905 (11th Cir. 2009). A defendant is "entitled to a qualified immunity defense so long as 'the law did not put the [defendant] on notice that his conduct would be clearly unlawful.'" *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The defendants' memorandum of law asserts:

> Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Rish v. Johnson*, 131 F.3d 1092, 1094 [(4th Cir. 1997)]; *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000).
>
> * * *
>
> Plaintiff's claims against these Defendants allege deficiencies in medical care, which is a discretionary function, and which falls under the protection [of] qualified immunity. Plaintiff has only alleged conclusory statements reciting the elements of a cause of action. Because Plaintiff has not sufficiently alleged claims against Defendants concerning alleged Eighth Amendment violations, under the first prong of the *Saucier* standard, these Defendants are entitled to qualified immunity on the Plaintiff's claims against them. Therefore, it is proper for this Court to dismiss these Defendants from the above-captioned matter.

(*Id.* at 20-21).

Defendants Ballard, Frame, Clifford, Mitchell, and Snyder appear to be correctional or administrative staff, and not licensed healthcare providers. The Second Amended Complaint does not specifically allege that any of these defendants interfered with the treatment being provided to Greene for his medical needs. To the extent that the Second Amended Complaint alleges that Greene was denied the ability to attend follow-up outside doctor's appointments, he has failed to specifically identify which defendant or defendants made those decisions. Rather, he generally and summarily refers to "MHU staff" and "medical staff" and fails to allege any specific conduct by a particular defendant that would suggest deliberate indifference or any actual injury he suffered. (ECF No. 79 at 3, ¶ 4).

Thus, the Second Amended Complaint falls woefully short of sufficiently pleading the subjective component necessary to state a plausible claim of deliberate indifference on this basis. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Second Amended Complaint fails to state plausible Eighth Amendment deliberate indifference claims arising out of Greene's medical treatment against defendants Ballard, Frame, Clifford, Mitchell, or Snyder and that those defendants are entitled to qualified immunity on those claims.[4]

### **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion to Dismiss (ECF No. 141) with

---

[4] The defendants' motion seeks dismissal of the Second Amended Complaint against them in its entirety. However, the motion documents only address the merits of Greene's Eighth Amendment claims concerning his medical treatment and fail to specifically address other substantive claims that implicate additional conduct by these defendants. In light of the proposed finding that the defendants' exhaustion defense is not ripe for adjudication, dismissal of the Second Amended Complaint in its entirety or against these defendants as a whole is not presently appropriate.

respect to Greene's claims arising out of the alleged "liquid item" placed in his body, which should also be dismissed as frivolous against all defendants named in the Second Amended Complaint under 28 U.S.C. § 1915(e)(2)(B)(i), 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(2), and with respect to his Eighth Amendment deliberate indifference to medical treatment claims against these specific defendants.  However, it is further respectfully **RECOMMENDED** that the presiding District Judge otherwise **DENY WITHOUT PREJUDICE** the defendants' Motion to Dismiss (ECF No. 141).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985*); United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.


February 25, 2020

Dwane L. Tinsley
United States Magistrate Judge